**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Burrell, | No. CV 11-00766-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

Mark Burrell seeks review under 42 U.S.C. §§ 405(g), 1383(c)(3), of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   Background**

   **A.   Factual Background**

Burrell was born on July 30, 1958. He has a high school education. In 1993, he began having panic attacks, but his condition subsequently improved significantly, and he began operating a carpet cleaning business. His anxiety returned in 2005, which made it difficult for him to drive or travel more than ten miles from his home. He continued to

1  operate the carpet cleaning business on a limited basis with the assistance of others.  In
2  addition, Burrell has chronic back pain and degenerative disc disease.

### B.     Procedural History

On September 28, 2006, Burrell applied for disability insurance benefits and supplemental security income, alleging disability beginning August 29, 2006.  The application was denied on initial review and again on reconsideration, after which Burrell requested that his claim be heard by an ALJ.  On May 2, 2008, an administrative hearing was held at which Burrell testified and was represented by counsel.  Mark Kelman, an impartial vocational expert, also appeared at the hearing.  On October 22, 2008, the ALJ issued his decision that Burrell was not disabled within the meaning of the Social Security Act.

On February 18, 2011, the Appeals Council denied Burrell's request for review of the ALJ's unfavorable decision, making that decision the final decision of the Commissioner.  On April 19, 2011, Burrell sought judicial review of the decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence."  *Id.*  As a general rule, "[w]here the evidence is susceptible to more than one rational

1  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be
2  upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).
3        The ALJ is responsible for resolving conflicts in medical testimony, determining
4  credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.
5  1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for
6  drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v.*
7  *Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III.  Five-Step Sequential Evaluation Process

9        To determine whether a claimant is disabled for purposes of the Social Security
10 Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). If the ALJ determines
11 that the claimant is disabled or not disabled at any step, the ALJ does not continue to the
12 next step. The claimant bears the burden of proof on the first four steps, but at step five,
13 the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.
14 1999).
15       At the first step, the ALJ determines whether the claimant is engaging in
16 substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If so, the claimant is not
17 disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the
18 claimant has a "severe" medically determinable physical or mental impairment.
19 § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step
20 three, the ALJ considers whether the claimant's impairment or combination of
21 impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20
22 C.F.R. Pt. 404 ("Listing of Impairments"). § 404.1520(a)(4)(iii). If so, the claimant is
23 automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step
24 four, the ALJ assesses the claimant's residual functional capacity and determines whether
25 the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If
26 so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the
27 fifth and final step, where he determines whether the claimant can perform any other

- 3 -

1 work based on the claimant's residual functional capacity, age, education, and work
2 experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the
3 claimant is disabled. *Id*.

4 If the claimant is found disabled at any point in the sequential evaluation process,
5 the ALJ must also determine whether his disability continued through the date of the
6 decision, following an eight-step evaluation process for the Title II claim and a seven-step
7 process for the Title XVI claim. 20 C.F.R. §§ 404.1594, 416.994. If the claimant is not
8 performing substantial gainful activity and does not have an impairment or combination
9 of impairments that meets or equals an impairment in the Listing of Impairments, the ALJ
10 must determine whether medical improvement has occurred and, if so, whether the
11 improvement results in an increase in the claimant's capacity to perform basic work
12 activities. If so, the ALJ must assess whether certain exceptions apply and whether the
13 claimant's current impairments in combination are severe. The ALJ then must assess the
14 claimant's residual functional capacity based on current impairments and determine if he
15 can perform past relevant work. If the claimant can perform past relevant work, his
16 disability has ended. If not, the ALJ must determine whether other work exists that the
17 claimant can perform, given his residual functional capacity and considering his age,
18 education, and past work experience. If the claimant can perform other work, he is no
19 longer disabled, but if he cannot perform other work, his disability continues.

20 **IV.   Analysis**
21     **A.   The Hearing Decision**

22 At step one, the ALJ found that Burrell has not engaged in substantial gainful
23 activity since August 29, 2006, the alleged onset date of disability. At step two, the ALJ
24 found that from August 29, 2006, through April 19, 2008, Burrell had the following
25 severe combination of impairments: "chronic back pain, degenerative disc disease, a
26 moderate anxiety disorder with agoraphobia." At step three, the ALJ found that from
27 August 29, 2006, through April 19, 2008, Burrell did not have an impairment or

combination of impairments that met or medically equaled one in the Listing of Impairments.

At step four, the ALJ determined that from August 29, 2006, through April 19, 2008, Burrell was unable to perform work-related activity on a regular and continuing basis and was unable to perform any past relevant work. At step five, the ALJ concluded that from August 29, 2006, through April 19, 2008, considering Burrell's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that Burrell could perform. Therefore, Burrell was under a disability from August 29, 2006, through April 19, 2008.

The ALJ found that Burrell has not developed any new impairment or impairments since April 20, 2008, and his current impairment or impairments are the same as that present from August 29, 2006, through April 19, 2008. He also found that medical improvement occurred as of April 20, 2008, and beginning April 20, 2008, Burrell's impairments have not caused more than minimal limitation in his ability to perform basic work activities. The ALJ found that as of April 20, 2008, Burrell:

> has the functional capacity to perform at least the full range of light work and is able to sit, stand and/or walk for about 6 hours in an 8-hour workday and lift and/or carry 10 pounds frequently and 20 pounds occasionally. The claimant can frequently climb ramps and stairs, balance, kneel, crouch and crawl. He has no manipulative or visual limitations, but needs to avoid concentrated exposure to extreme cold, vibration, and hazards such as moving machinery and unprotected heights.

**B.    Subjective Symptom Testimony**

**1.    Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the

1  rejection. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).[1]  To support a lack of
2  credibility finding, the ALJ is required to point to specific facts in the record that
3  demonstrate that Burrell's symptoms are less severe than he claims. *Id.* at 592.  "Factors
4  that an ALJ may consider in weighing a claimant's credibility include reputation for
5  truthfulness, inconsistencies in testimony or between testimony and conduct, daily
6  activities, and unexplained, or inadequately explained, failure to seek treatment or follow
7  a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007)
8  (internal quotation marks and citations omitted).

9  To be found credible regarding subjective pain or fatigue, a claimant is not
10 required to:  (1) produce objective medical evidence of the pain or fatigue itself, or the
11 severity thereof; (2) produce objective medical evidence of the causal relationship
12 between the medically determinable impairment and the symptom; or (3) show that his
13 impairment could reasonably be expected to cause the severity of the alleged symptom,
14 only that it could reasonably have caused some degree of the symptom. *Smolen v.*
15 *Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

### 2. The ALJ Did Not Err by Finding Burrell's Subjective Symptom Testimony Not Fully Credible.

Burrell contends that the ALJ erred by failing to set forth specific, clear, and convincing reasons to reject Burrell's testimony about the severity of his subjective symptoms. In his hearing decision, the ALJ found Burrell's testimony concerning the limiting effects of his symptoms from August 29, 2006, through April 19, 2008, generally

---

[1] Contrary to the Commissioner's contention, *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991), does not permit finding subjective symptom testimony not credible without articulating clear and convincing reasons. The Commissioner correctly quotes *Bunnell* as stating an ALJ must make specific findings, supported by the record, to support his conclusion that a claimant's allegations of severity are not credible. *See id.* at 345. But *Bunnell* does not address whether the reasons must be clear and convincing. Rather, it addresses whether an ALJ may discredit a claimant's allegations of the severity of pain solely on the ground that the allegations are unsupported by objective medical evidence.

- 6 -

credible. He found it to be consistent with two medical assessments and concluded that from August 29, 2006, through April 19, 2008, Burrell was severely limited in responding to customary work pressures and performing simple and complex tasks and had moderately severe limitations in performing repetitive and varied tasks. The ALJ further determined that from August 29, 2006, through April 19, 2008, Burrell's anxiety disorder with panic attacks prevented him from having normal interaction with the public, co-workers, employees, or supervisors.

The ALJ found Burrell's statements concerning the intensity, persistence, and limiting effects of his impairments only partially credible after April 20, 2008, because both Burrell's testimony and his mental health records showed significant improvement:

> At the hearing, the claimant testified that he used to go on a monthly basis to his mental health provider for treatment of his anxiety disorder, but the frequency of visits has been reduced and his next appointment was three months away. The mental health records indicate that the claimant admits to an improvement in his anxiety as a result of the medications. The claimant stated that he was still operating his carpet cleaning business, although at a reduced level, and he has two people whom he employs as needed. He testified that he is advertising his company in the internet in at least three zip codes that are near his home zip code. The claimant stated that he is taking medication and it has no side effects and he has no problems performing activities of daily living and does chores around his home. The claimant testified that he is unable to work because the combination of problems with anxiety and depression sometimes prevent him from getting where he needs to be. He stated that he does not always try to isolate himself.
>
> . . . .
>
> The claimant's anxiety disorder is no longer disabling. A mental status evaluation in April 2008 described the claimant as well-groomed, with good hygiene and appropriate appearance. His motor activity was within normal limits and his mood was euthymic and anxious. The claimant's thought process was goal-directed, and his insight, judgment, attention and concentration were good. The claimant was assessed with a GAF scale score of 60 which according to the DSM-IV, indicated only, at worst, moderate difficulty in social or occupational functioning. The claimant had been progressing in his recovery for some time and an earlier mental status evaluation conducted in February 2008 had similar clinical signs and indicated the claimant's mood as euthymic, his affect appropriate and his memory as pretty good. When the [claimant] initially began treatment, he was regularly assigned a GAF score of 50. Utilizing just GAF scores, it is obvious on paper that an improvement has been effected in the claimant's mental condition. The claimant's appearance was good and he was alert

> and oriented. His appetite and sleep were good and his main psychosocial stressor was not panic attacks but finance. []
>
> In contrast, according to a Third Party Function Report completed by the claimant's mother, the claimant helps her around the house, takes walks, rides his bike and goes grocery shopping. The claimant has no problem with grooming, hygiene and dressing. He prepares his own meals as he always had with no changes. The claimant does household chores including cleaning, laundry, household repairs, ironing, and mowing with encouragement. He goes outside very often, drives a car, shops for groceries but needs help with finances. The claimant plays music, reads, watches television and can follow written and spoken instructions. The claimant can handle changes in routine but [doe]s not so well in handling stress. The claimant attends church, talks on the phone, rides his bike and walks on a daily basis.

As shown above, contrary to Burrell's contention, the ALJ did not rely solely on Burrell's GAF score of 60 to find improvement as of April 20, 2008. The ALJ did not reject Burrell's testimony entirely, but found him to be only partially credible regarding the severity of his symptoms after April 20, 2008, and provided specific, clear, and convincing reasons for doing so.

### C. Weighing Medical Source Evidence

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.

- 8 -

1  *Lester,* 81 F.3d at 830.  Moreover, the Commissioner must give weight to the treating
2  physician's subjective judgments in addition to his clinical findings and interpretation of
3  test results.  *Id.* at 832-33.
4        Further, an examining physician's opinion generally must be given greater weight
5  than that of a non-examining physician.  *Id.* at 830.  As with a treating physician, there
6  must be clear and convincing reasons for rejecting the uncontradicted opinion of an
7  examining physician, and specific and legitimate reasons, supported by substantial
8  evidence in the record, for rejecting an examining physician's contradicted opinion.  *Id.* at
9  830-31.
10        The opinion of a non-examining physician is not itself substantial evidence that
11  justifies the rejection of the opinion of either a treating physician or an examining
12  physician.  *Id.* at 831.  "The opinions of non-treating or non-examining physicians may
13  also serve as substantial evidence when the opinions are consistent with independent
14  clinical findings or other evidence in the record."  *Thomas*, 278 F.3d at 957.  Factors that
15  an ALJ may consider when evaluating any medical opinion include "the amount of
16  relevant evidence that supports the opinion and the quality of the explanation provided;
17  the consistency of the medical opinion with the record as a whole; [and] the specialty of
18  the physician providing the opinion."  *Orn*, 495 F.3d at 631.
19        Moreover, Social Security Rules expressly require a treating source's opinion on
20  an issue of a claimant's impairment be given controlling weight if it is well-supported by
21  medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent
22  with the other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  If a
23  treating source's opinion is not given controlling weight, the weight that it will be given is
24  determined by length of the treatment relationship, frequency of examination, nature and
25  extent of the treatment relationship, relevant evidence supporting the opinion, consistency
26  with the record as a whole, the source's specialization, and other factors.  *Id.*
27
28
- 9 -

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 2. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

Burrell contends the ALJ erred by not giving controlling weight to the opinion of treating physician C. D. Zerrudo, M.D., and by terminating benefits on April 20, 2008, based on Dr. Zerrudo's April 14, 2008 treatment note. He asserts that Dr. Zerrudo's April 30, 2008 Medical Assessment of Claimant's Ability to Perform Work Related Activities (Mental) is uncontradicted, but the ALJ found that it was contradicted by Dr. Zerrudo's April 14, 2008 treatment note.

Dr. Zerrudo's April 30, 2008 functional assessment stated that Burrell had moderately severe impairments in most areas and severe impairments in his ability to respond to customary work pressures and to perform both simple and complex tasks. "Severe" indicates "extreme impairment of ability to function." The functional assessment also stated that no psychological evaluation was obtained or considered in describing the limitations in the assessment. The April 14, 2008 treatment note stated that Dr. Zerrudo observed Burrell to be cooperative, goal-directed, alert, euthymic, and

- 10 -

anxious and to have appropriate affect, good attention and concentration, grossly intact memory, good insight, and good judgment.

In order to reject a treating physician's contradicted opinion, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence in the record. *See Lester,* 81 F.3d at 830. The ALJ did not reject Dr. Zerrudo's opinion entirely, but did not give it controlling weight for the period after April 19, 2008. The ALJ stated:

> In 22F, the treating physician, Dr. Zerrudo, completed an assessment form which most likely would appear to reflect the claimant's symptomotology throughout the treatment period and for that premise, it is accepted by the undersigned. However a review of the treatment notes show a definite improvement in the claimant's mental condition which is not reflected in Exhibit 22F and thus the exhibit cannot be fully accepted by the undersigned. It is clear from the treatment notes that the medications are significantly helping the claimant and his most recent medical records would show that the current treatment, for the most part, appears to consist primarily of medical management of the medications. The treating sources have significantly increased the claimant's GAF scores over a year of treatment and the written notes indicated that the claimant has no troubling problems worth discussing with the treatment providers other than his inability to obtain Social Security disability payments. The records further indicate that the claimant has an appropriate and well-groomed appearance with a cooperative attitude, an appropriate affect and euthymic mood, goal-directed though process, good insight and judgment, good attention and concentration. In short, it would appear that the claimant's mental impairments have improved to the point that as of April, 2008, he would be able to return to the workforce.
>
> With further regard to Exhibit 22F, it should be noted that Dr. Zerrudo's opinion is inconsistent with the claimant's testimony that he performs activities of daily living and does chores around his home and is also inconsistent with the Third Party Function Report from the claimant's mother as stated earlier. Finally, the limitations appear to be based on the claimant's subjective complaints as Dr. Zerrudo indicated that he had not conducted a psychological evaluation of the claimant in assessing the claimant's limitations.

These reasons provided by the ALJ are specific, legitimate, and supported by substantial evidence in the record.

### D. Determination of Severity of Mental Impairment

Burrell contends that the ALJ erred at step two of the sequential evaluation process by classifying his mental impairment non-severe as of April 20, 2008, based on Burrell's impairment not satisfying a Listing at step three.

- 11 -

1    At the second step of the sequential evaluation process, the medical severity of a
2 claimant's impairments must be considered. 20 C.F.R. § 404.1520(a)(4)(ii). "An
3 impairment or combination of impairments is not severe if it does not significantly limit
4 [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R.
5 § 404.1521(a). "Basic work activities" refers to the ability and aptitudes necessary to do
6 most jobs, such as physical functions; capacities for seeing, hearing, and speaking;
7 understanding, carrying out, and remembering simple instructions; use of judgment;
8 responding appropriately to supervision, co-workers and usual work situations; and
9 dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

10   "The steps outlined in 20 C.F.R. § 404.1520 apply to the evaluation of physical
11 and mental impairments." 20 C.F.R. § 404.1520a(a). In addition, when the severity of
12 mental impairments is evaluated, a special technique is followed. *Id.* Under the special
13 technique, first it is determined whether the claimant has a medically determinable mental
14 impairment, and then the degree of functional limitation resulting from the impairment(s)
15 is rated. 20 C.F.R. § 404.1520a(b). Rating the degree of functional limitation is based on
16 the extent to which the claimant's impairment(s) interferes with his ability to function
17 independently, appropriately, effectively, and on a sustained basis. 20 C.F.R.
18 § 404.1520a(c)(2). Section 404.1520a(c) expressly references the Listing of Impairments
19 for information about the factors to be considered in rating the degree of functional
20 limitation. 20 C.F.R. §§ 404.1520a(c)(2), (3). Citing to 12.00C of the Listing of
21 Impairments, it identifies four broad functional areas in which the degree of functional
22 limitation is to be rated: activities of daily living; social functioning; concentration,
23 persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).
24 After the degree of functional limitation is rated, then the severity of the claimant's
25 mental impairment(s) is determined. 20 C.F.R. § 404.1520a(d).

26   Here, the ALJ applied the special technique for evaluating the severity of mental
27 impairments. He found that Burrell's current medically determinable impairment of

anxiety disorder with agoraphobia does not cause more than minimal limitation in his ability to perform basic mental work activities and is therefore non-severe.  He expressly stated, "In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments []."  The ALJ then explained his findings that support his rating of mild limitation in the areas of daily living; social functioning; and concentration, persistence, or pace.  Regarding the fourth area, he found Burrell has experienced no episodes of decompensation.  Citing the regulations governing the special technique for evaluation of mental impairments, the ALJ concluded that Burrell's mental impairment is non-severe because it causes no more than mild limitation in any of the first three functional areas and no limitation in the fourth area.

Therefore, the ALJ did not err by considering the Listing of Impairments at step two because it is expressly incorporated in the special technique for evaluation of mental impairments.  *See* 20 C.F.R. §§ 404.1520a(c)(2), (3).

IT IS THEREFORE ORDERED affirming the final decision of the Commissioner of Social Security denying Burrell disability benefits.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant against Plaintiff and that Plaintiff take nothing.  The Clerk shall terminate this action.

DATED this 24th day of April, 2012.

_____
Neil V. Wake
United States District Judge